**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **STEPHAN BOGNAR,** | |
| *Plaintiff,* | |
| **v.** | **COMPLAINT FOR NEW YORK LABOR LAW VIOLATIONS** |
| **INTEGRAL HEALTH & WELLNESS, LLC, NYDG FOUNDATION INC., JEAN PIERRE VAN LAERE, VAN LAERE LLC, DAVID COLBERT, DAVID COLBERT, LLC, JOHN DOES 1-10 and XYZ CORPORATIONS 1-10,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

Plaintiff Stephan Bognar, by his undersigned attorneys, alleges as follows, upon actual knowledge with respect to himself and his own acts, and on information and belief as to all other matters.

## I.    NATURE OF THE ACTION

1.      This is a civil action for New York labor law violations brought by Plaintiff Stephan Bognar against all Defendants for intentional and willful wage theft of over $257,000.

2.      Plaintiff seeks to recoup the wages he earned and is owed from Defendants, plus liquidated damages (100% of owed wages) under New York labor law, interest, statutory penalties for wage statement violations, statutory penalties for wage notice violations, reasonable attorneys' fees, costs and interest.

# I.  THE PARTIES

3.      Plaintiff Stephan Bognar ("Plaintiff" or "Bognar") is a resident of California and citizen of Canada.  Plaintiff is an accomplished and skilled conservationist, experienced in operating non-profit organizations.

4.      Defendant Integral Health & Wellness, LLC, d/b/a New York Dermatology Group[1] (the "Spa"), is a for profit New York company with its principal place of business at 119 5th Avenue, 5th Floor, New York, New York 10003.

5.      Defendant NYDG Foundation Inc. (the "Foundation") is a New York non-profit company with its principal place of business at 119 5th Avenue, 5th Floor, New York, New York 10003.

6.      Defendant Jean Pierre Van Laere ("Van Laere") is a resident of New York, founder of the Spa and Foundation and owner and operator of Defendant Van Laere LLC which on information and belief, has operational control over both the Foundation and Spa.  During all relevant times, he served as co-Founder and CEO of the Spa and Vice President and Treasurer of the Foundation. Van Laere may be a member of Defendant Integral Health & Wellness, LLC.

7.      Defendant Van Laere LLC ("Van Laere LLC") is a for profit New York company with its principal place of business at 119 5th Avenue, 5th Floor, New York, New York 10003. It is owned and operated by Van Laere and may be a member of Defendant Integral Health & Wellness, LLC.

8.      Defendant David Colbert ("Colbert") is a resident of New York, dermatologist, founder of the Spa and Foundation.  During all relevant times, he served as co-founder and Head Physician of the Spa and President of the Foundation. He can be served at 119 5th Avenue, 5th

---

[1] https://www.nydermatologygroup.com/.

2

Floor, New York, New York 10003. Colbert owns and operates Colbert LLC.  Colbert may be a member of Defendant Integral Health & Wellness, LLC.

9.      Defendant David Colbert LLC ("Colbert LLC") is a for profit New York limited liability company, and on information and belief, has operational control over both the Foundation and Spa.  Colbert LLC's principal place of business is 119 5th Avenue, 5th Floor, New York, New York 10003. Colbert LLC owned and operated by Colbert. Colbert LLC may be a member of Defendant Integral Health & Wellness, LLC.

10.     Defendants JOHN DOES 1-10 and XYZ CORPORATIONS 1-10, which are unknown to Plaintiff, may have benefited from Plaintiff's services and are affiliated with the named Defendants.  As the identify of Defendants' business affiliates are within the exclusive possession of the named Defendants, such information may only be revealed through discovery, and Plaintiff reserves the right, upon learning of the identities of said individuals or entities, to move to amend this this Complaint to name these companies and individuals as defendants.

## II.      JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff is a diverse citizen (Canadian citizenship and California resident) from all Defendants (all New York citizens) and the amount in controversy exceeds $75,000.00.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) because all Defendants are residents of the State in which the district is located, all Defendants conducted business in this District, and because the wrongful conduct giving rise to this claim occurred from within this District with damages caused to Plaintiff in this District.

13.     This Court has *in personam* jurisdiction over Defendants because Defendants availed themselves of the privileges of conducting business in this District and Defendants

incurred a benefit from Plaintiff here, thus it is reasonable for Defendants to submit to the jurisdiction of this federal district court.

### III.      FACTUAL ALLEGATIONS

14.      Plaintiff Stephan Bognar is an accomplished and skilled conservationist with a background in operating international non-profit humanitarian organizations.

15.      Plaintiff is currently based in Southeast Asia where he works for a conservation management organization named Wildlife Works, holding the title Director of Sustainability, Asia.  There, Plaintiff works across Asia on the effect that climate change and natural resource depletion have on local marginalized communities, with a focus on carbon development programs.  He is known for his work as a development specialist and is recognized as a "conservation law enforcement officer."

16.      Defendant Integral Health & Wellness, LLC, d/b/a New York Dermatology Group (NYDG) is a dermatology, skin care, and luxury for-profit spa (the "Spa") based in New York City catering to celebrities and other high net-worth patients.[2]  In addition to the services offered by the Spa, NYDG also produces and sells several lines of high-end skin care products under its brand name, including sunscreen.  The Spa sells luxury skin care products manufactured by both Van Laere LLC and Colbert LLC.

17.      On information and belief, Van Laere and Colbert created the Foundation in 2010 to be the "charitable arm" of the Spa, focused on skin health issues in underserved communities around the world.  However, over time, while the Foundation may have conducted more

---

[2] On its website, NYDG describes its business model: "Our clients include some of the most demanding, discerning and visible personalities in the world.  Multi-cultural and of all ages, they share a common concern for the appearance and wellbeing of their skin.  From medical dermatology to cutting edge aesthetic procedures, for the past 20 years we have earned their trust delivering sustainable results visit after visit.  Fulfilling the prescriptive needs of our practice, the NYDG product line empowers clients to better take care of their skin outside of our office." Available at: https://www.nydg.com/about-new-york-dermatology-group-practice html.

charitable activities, its primary purpose was a marketing and sales vehicle for the Spa, Van

Laere, Van Laere LLC, Colbert, Colbert LLC, and their various skin care products.

18.     On information and belief, at Van Laere and Colbert's direction, management

and/or control, the Foundation regularly announced major initiatives and partnerships, including

with the United Nations, but these initiatives and partnerships largely went unfunded,

underfunded and/or and their promises of assistance to communities in need went largely

unfulfilled.  Notably, the Spa's pledge to donate 1% of its product sales to the Foundation may

not have ever occurred.

19.     Sometime in 2017, Van Laere and Colbert lead Plaintiff to believe that the

Foundation would be expanding its reach to work more extensively around the world to provide

skin health treatment to vulnerable populations susceptible to skin conditions, including

albinism, a genetic condition that can be deadly.[3]  Van Laere and Colbert's plan was to build

programs on the capital raised by donations from the Spa's notable clients which in turn was

intended to create more profits for the Spa and Van Laere and Colbert each individually.

20.     In early 2017, Plaintiff met with Van Laere at the restaurant da Umberto on W. 17

and 6th Ave in New York City where he was initially orally promised an $8,000 monthly salary

to become the Executive Director of the Foundation.

21.     Sometime after the meeting, Plaintiff began working full-time as the Executive

Director of the Foundation in February 2017 while also regularly performing services that

benefited the Spa, so much so that the Spa, through Van Laere and Colbert, assumed full

responsibility for Plaintiff's salary.

---

[3] People born with albinism lack melanin in their skin, which creates an extreme risk of skin cancer and in some cultures, they are literally hunted for their body parts, which are thought to contain magical properties if ingested.

22.     During Plaintiff's tenure as Executive Director of the Foundation, Defendants regularly had Plaintiff incorporate the Spa's product lines into the Foundation's programming, advocacy, messaging, and fundraising activities, including social media posts.

23.     Plaintiff performed all duties asked of him, as well as all assignments he was asked to do for the Spa's benefit, in a timely and professional manner.

24.     While Van Laere and Colbert's plan was for the Foundation to fund its own operations, including Plaintiff's salary, using donations made by the Spa's wealthy clients, the support never materialized.  Yet, despite the Foundation failing to raise sufficient working capital, all Defendants continued to benefit from their association with the Foundation.

25.     Starting from when Plaintiff first started his job in 2017, the Foundation began failing to regularly pay Plaintiff his monthly salary.

26.     Colbert personally paid Plaintiff $7,500 in July 2017.

27.     Van Laere and Colbert kept promising that they would eventually pay Plaintiff what he was owed but made one legally indefensible excuse after another for not doing so. Whether it was the Foundation's inability to raise funds, COVID's effect on the Spa's income, the costs of the Spa's new 7,000 square foot, multi-million buildout at its 5th Avenue offices,[4] Van Laere and Colbert's failure to sell one of their luxury New York City apartments, or Van Laere needing to maintain his yacht and pay its boat captain, Defendants strung Plaintiff along in clear violation of New York labor law.

28.     Given his position and duties as Executive Director, Plaintiff should have been designated as an employee at all times.  Instead, Defendants misclassified him as an independent

---

[4] https://www.nydermatologygroup.com/wp-content/uploads/2019/02/InteriorDesign_article_25Feb2019.pdf and https://www.brandonhawarch.com/portfolio/new-york-dermatology-group-flagship/

contractor.  In fact, Plaintiff filled out a Federal Form W-2 Wage and Tax Statement for services performed by employees.

29.    Plaintiff consistently and regularly performed services in New York for all Defendants.

30.    All Defendants shared the same, common phone number, 212-533-8333.

31.    All Defendants shared the same principal place of business address and office space, 119 5th Avenue, 4th floor, New York, New York 10003.

32.    On information and belief, all Defendants shared the same accounting firm.

33.    On information and belief, for most of its existence, the Foundation's finances had been overseen by the Spa's longtime accountant and friend of Van Laere and Colbert, Carlos Hernandez, and Van Laere as the Foundation's Treasurer.  In or about 2019, concerns over the Foundation and Spa's commingled financials lead the Foundation's Board of Directors to replace Van Laere and appoint accountant Nitin Vaswani as Board Treasurer.  Vaswani spent months battling Hernandez over complete access to the Foundation's books and records.  Once Hernandez relented, Vaswani discovered that Hernandez had forged Vaswani's name on numerous Foundation documents.  Vaswani resigned from the Board in protest shortly thereafter.

34.    On information and belief, the Foundation and the Spa used the same bank account, and the Spa would sometimes pay Plaintiff a portion of what he was owed.

35.    On information and belief, all Defendants shared the same computer server.

36.    On information and belief, all Defendants shared the same worker's compensation insurance.

37.    Defendants failed to provide Plaintiff proper wage statements under New York law.

38.     Defendants failed to provide Plaintiff with an annual wage notice as required by New York law.

39.     Throughout his employment with the Foundation, Plaintiff regularly performed services for all Defendants with disregard for corporate form or separation of for-profit and not-for-profit activities, all the while Defendants failed to timely pay Plaintiff all wages owed despite demand for such and despite Van Laere and Colbert personally enriching themselves.

40.     In 2019, the New York State Assembly issued a certificate honoring Plaintiff in his capacity as the Executive Director of the New York Dermatological Group Foundation, declaring him "an outstanding individual worthy of esteem for his contribution to environmental leadership and education."

41.     In 2019, the US House of Representatives issued a certificate honoring Plaintiff in his capacity as the Executive Director of the New York Dermatological Group Foundation, declaring him "a tireless advocate for marginalized groups with skin conditions" and "a key leader in the fight against rural poverty and environmental injustice."

42.     On August 27, 2019, the Foundation held a Board meeting and written Board minutes show that "Foundation did not have revenue last year so the salary [of Plaintiff] was transferred completely to the clinic [Spa]" and Van Laere agreed "to pay for Plaintiff's salary out of the revenue from the clinic [Spa]."  This evidences that the Spa and Foundation were acting as one in the same and the corporate form should be disregarded.

43.     On November 22, 2019, one of the Foundation's Board members, Stephanie Sinclair, sent written notice that the Foundation had failed to pay Plaintiff what he was owed when she sent an email to all Board members resigning her position in protest of Van Laere and

Colbert's disinterest in addressing the issue (emphasis added and email addresses and minors'

names redacted for privacy):

> From: **Stephanie Sinclair**
> Date: Fri, Nov 22, 2019 at 1:30 PM
> Subject: Resignation
> To: Ann Omalley, **JP Van Laere**, Nitin Vaswani, **Stephan Bognar**,
> B.malekzadeh47@, David Colbert
>
> Dear Board,
>
> Please accept this as my resignation from the NYDG Foundation Board of Directors. My
> reasons for doing so are numerous, but my primary concerns are as follow:
>
> - Yesterday (11/21/19), **JP [Van Laere] old Ann that he/the organization will not be
> paying our executive director Stephan Bognar [Plaintiff] his overdue salary of more
> than $225,000 by the end of this year, despite the fact that JP had promised to do so
> during our board meeting** in August. Regardless of the particular reason or rationale, it
> is morally unconscionable and legally indefensible to not pay an employee for two+
> years. Had I known about the ongoing issue with Stephan's salary prior to joining the
> board, I would never have done so. Nor would I have asked a dear personal and
> professional contact, model Diandra Forrest, or any the Colorful ambassadors or team
> members to be part of the Organization's efforts.
>
> - It is illegal in NY State to not pay an employee. Full stop. **Promises to pay count for
> nothing under the law.** Having been counseled on the issue for my own organization by
> numerous attorneys, I can tell you with confidence that - regardless of any 1099, W4s or
> offer letters - New York is an employee-friendly state and will classify Stephan's tenure
> as ED of the Foundation as a full time employee and will likely fine the organization
> accordingly, if not do more. This is a serious liability not only to the Foundation but also
> to each director in their individual capacity. I have done my best to right the ship's
> trajectory since learning of this issue, but am now convinced it will continue on its same
> course regardless of my input.
>
> - As examples of my inability to have a meaningful impact on this board, over the past
> several weeks I sent a minimum of four emails to the board chair and two to the board of
> directors about issues that impact the financial stability of the Foundation....
>
> ...The other two emails were about the expectation date for payment of Stephan's past due
> salary...
>
> ….If an organization cannot (or will not) take seriously its obligations to its top executive
> and sole employee for more than two years, how much more seriously will it take its
> mission to help some of the world's most vulnerable people, such as the Rwandan's with
> albinism who are now depending on NYDGF scholarships?

9

For these reasons and more, I can no longer remain on the NYDGF board of directors. Therefore, effective immediately, I resign this position.

...Running a charity is not a game or a vanity project, especially in NY State (just ask the president). Caring people invest their funds and volunteer their time to provide critical services to people who simply were born into a less fortunate situation. I am deeply disappointed and saddened by this entire situation and hope the Foundation can find its way forward with transparency and integrity.

Best,
Stephanie

44.     Despite such communication by a Foundation Board member and numerous attempts to get paid by Plaintiff, no Defendant has disputed that Defendants owe Plaintiff wages of over $257,000 and both Van Laere and Colbert have admitted that Plaintiff is owed the wages he earned.

## IV.     CLAIMS FOR RELIEF

### COUNT I

### BREACH OF CONTRACT
### (AGAINST ALL DEFENDANTS)

45.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

46.     Plaintiff agreed to work for Defendants for a salary of $8,000 per month, then that amount was wrongly compromised to $7,500 and $7,000 per month by Plaintiff in an effort to get paid a reduced portion of what was owed and in violation of New York law.

47.     The oral agreement to work for Defendants started in or about early 2017.

48.     Defendants agreed to and were required to pay Plaintiff for salary earned and reimburse him for expenses that were incurred while working for Defendants.

49.     Plaintiff performed all assignments and tasks asked of him under the agreement in a timely and professional manner.

50.     Despite Plaintiff performing services as agreed, Defendants breached the terms of the agreement, and failed to pay him the monthly salary he earned from 2017 through 2020 and reimburse Plaintiff for expenses he incurred and is owed.

51.     Plaintiff suffered money damages in the form of unpaid wages as a direct and proximate result of Defendants' breach of the agreement with Plaintiff.

52.     Plaintiff demands judgment against Defendants for compensatory and special damages of at least $257,000, including both the actual loss and unjust enrichment caused by said breaches, interest, attorney's fees, costs and any other remedy the Court finds appropriate.

53.     Under New York Labor Law (NYLL) § 663, Defendants are liable "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

54.     Plaintiff is entitled to liquidated damages of 100% of the wages that are owed under the same statutory scheme, for a total of $514,000, plus pre-judgment interest.

## COUNT II

### NEW YORK STATE LABOR LAW
### FOR FAILURE TO PROVIDE PROPER ANNUAL WAGE NOTICES
### (AGAINST ALL DEFENDANTS)

55.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

56.     Defendants have willfully failed to furnish Plaintiff with annual wage notices as required by NYLL, Article 6, §195(1), in English at the time of hiring, and on or before February

first of each subsequent year of the employee's employment with the employer, a notice

containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other; the regular pay day designated by the employer in

accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as"

names used by the employer; the physical address of the employer's main office or principal

place of business, and a mailing address if different; the telephone number of the employer; plus

such other information as the commissioner deems material and necessary.

57.     Through their knowing or intentional failure to provide Plaintiff with the annual

wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190

et seq., and the supporting New York State Department of Labor Regulations.

58.     Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is

entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide

Plaintiff with proper annual wage notices for a total of $5,000, reasonable attorneys' fees, costs,

and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

**COUNT III**

**NEW YORK STATE LABOR LAW**
**FOR FAILURE TO PROVIDE PROPER WAGE STATEMENTS**
**(AGAINST ALL DEFENDANTS)**

59.     Plaintiff repeats and realleges each and every allegation set forth in the preceding

paragraphs of this Complaint.

60.     Defendants have willfully failed to furnish Plaintiff with statements with every

payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered

by that payment of wages; name of employee; name of employer; address and phone number of

employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other; gross wages; deductions; net wages; the regular hourly rate

or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours

worked. Through their knowing or intentional failure to provide Plaintiff with the wage

statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et

seq., and the supporting New York State Department of Labor Regulations.

61.     Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is

entitled to statutory penalties of $250 for each workday that Defendants failed to provide

Plaintiffs with proper wage statements, or a total of $5,000, reasonable attorneys' fees, costs, and

injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## COUNT IV

## NEW YORK STATE LABOR LAW
## FOR FAILURE TO PAY WAGES EARNED

### (AGAINST ALL DEFENDANTS)

62.     Plaintiff repeats and realleges each and every allegation set forth in the preceding

paragraphs of this Complaint.

63.     Pursuant to Article Six of the New York Labor Law, workers, such as Plaintiff are

protected from wage underpayments and improper employment practices.

64.     Pursuant to NYLL § 190, the term "employee" means "any person employed for

hire by an employer in any employment."

65.     As a person employed for hire by Defendants, Plaintiff is an "employee," as

understood in Labor Law §190.

66.     Pursuant to Labor Law § 190, the term "employer" includes any "person,

corporation, limited liability company, or association employing any individual in any

occupation, industry, trade, business or service."

67.     Pursuant to Labor Law § 650 et seq., Plaintiff was entitled to be paid by Defendants for the agreed monthly salary of $8,000 per month.

68.     Each Defendant entity that hired Plaintiff and Plaintiff performed services for are an "employer."

69.     Plaintiff agreed upon a wage rate that was within the meaning of New York Labor Law §§ 190, 191.

70.     Pursuant to Labor Law § 191 and the cases interpreting same, workers such as Plaintiff are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

71.     In failing to pay Plaintiffs proper wages for time worked in one week, Defendants violated Labor Law § 191, by failing to pay Plaintiffs all of his wages earned within the week such wages were due.

72.     New York Labor Law § 663 provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

73.     By the foregoing reasons, Defendants have violated New York Labor Law §190 et. seq., and § 650 et seq. and is liable to Plaintiff in an amount to be determined at trial, interest, attorneys' fees and costs, which is at least $257,000 plus liquidated damages of 100% of this amount owed and outstanding.

14

## COUNT V

## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

74.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

75.     Defendants have received the benefit from Plaintiff's work, contacts, goodwill, reputation, knowledge, labor, intellectual property, and services, for which he has not been fully compensated.

76.     Defendants have been and will continue to be unjustly enriched to the detriment of Plaintiff.

77.     In the absence of a contract and as alternative cause of action, Defendants have no lawful right to the benefits they received under the circumstances and, to the extent that they are permitted to retain them, they each would be unjustly enriched.

78.     Plaintiff may have no other adequate remedy at law and, accordingly, invoking the equitable powers of this Court may be the only way for Plaintiff to become whole.

79.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been damaged.

80.     Plaintiff demands judgment against Defendants for compensatory and special damages to be determined at trial, including both the actual loss and unjust enrichment caused by not compensating Plaintiff, for attorney's fees, costs and any other remedy this Court finds appropriate.

## COUNT VI

### VIOLATION OF N.Y. GEN. BUS. LAW § 349
### (AGAINST ALL DEFENDANTS)

81.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

82.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.

83.     Failing to pay wages owed on services performed and reimbursements is an unfair, unconscionable, and deceptive act and practice that harms lawful competition, trade and commerce and is contrary to the public policy of New York to protect consumers for unlawful and deceptive behavior in business and consumer transactions.

84.     The conduct of the Defendants described herein constitutes consumer orientated deceptive acts and practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury, and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

85.     Defendants' conduct substantially affected New York commerce.

86.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been damaged and injured.

87.     At all relevant times alleged herein, by reason of the foregoing, Defendants have engaged in unfair competition, unconscionable, false and deceptive behavior in violation of Gen. Bus. Law §§ 349, et seq.

88.     Accordingly, Plaintiff seeks all relief available under New York Gen. Bus. Law §§ 349(h), et seq.

89.     As a result, Plaintiff has sustained damages in an amount to be determined at trial.

90.     Plaintiff reserves the right to amend as necessary.

## V.     JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor on each and every claim for relief set forth above and award him relief, including the following:

**FOR COUNT I: BREACH OF CONTRACT:**

1.     Ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

2.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6 §§ 190 et seq., NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations;

3.     Unpaid monetary damages, of an amount no less than $257,000 to be proven at trial, for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff;

4.     Reasonable attorney's fees, costs and any other remedy this Court finds appropriate.

5.     Prejudgment and post-judgment interest;

**FOR COUNT II: NEW YORK STATE LABOR LAWFOR FAILURE TO PROVIDE PROPER ANNUAL WAGE NOTICES:**

     1.     Statutory amounts of fifty dollars for each workday that Defendants failed to provide Plaintiff with proper annual wage notices, or a total of $5,000, as provided for by NYLL, Article 6 § 198;

     2.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6 § 198, and

     3.     Reasonable attorney's fees, costs and any other remedy this Court finds appropriate.

     4.     Prejudgment and post-judgment interest.

**FOR COUNT III: NEW YORK STATE LABOR LAW FOR FAILURE TO PROVIDE PROPER WAGE STATEMENTS:**

     1.     Statutory amounts of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff with proper wage statements, or total of $5,000 each, as provided for by NYLL, Article 6 § 198;

     2.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6 § 198;

     3.     Reasonable attorney's fees, costs and any other remedy this Court finds appropriate, and

     4.     Prejudgment and post-judgment interest.

**FOR COUNT IV: NEW YORK STATE LABOR LAW FOR FAILURE TO PAY WAGES EARNED:**

     1.     Ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of New York State law, including any wages owed of $257,000 plus 100% of amount wages owed as liquidated damages for an additional $257,000, totally $514,000;

18

    2.      Reasonable attorney's fees, costs and any other remedy this Court finds appropriate, and

    3.      Prejudgment and post-judgment interest.

**FOR COUNT V: UNJUST ENRICHMENT:**

    1.      Ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

    2.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6 §§ 190 et seq., NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations;

    3.      Unpaid monetary damages, to be proven at trial, for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff;

    4.      Reasonable attorney's fees, costs and any other remedy this Court finds appropriate.

    5.      Prejudgment and post-judgment interest;

**FOR COUNT VI: VIOLATION OF N.Y. GEN. BUS. LAW § 349:**

    1.      Ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of New York State law;

    2.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6 §§ 190 et seq., NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations;

    3.      Unpaid monetary damages, to be proven at trial, for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff;

4.      Reasonable attorney's fees, costs and any other remedy this Court finds appropriate.

5.      Prejudgment and post-judgment interest;

**FOR ALL COUNTS:**

1.      That an Order be entered requiring Defendants to pay Plaintiff punitive damages, as permitted by law, in an amount to be determined due to the foregoing willful acts;

2.      That Plaintiff be granted prejudgment and post-judgment interest as permitted by law; and

3.      Other relief as the Court may deem appropriate.


Dated: January 12, 2023

Respectfully Submitted,

DUNCAN FIRM, P.A.

By: */s/ James H. Bartolomei*
James H. Bartolomei III
809 W. 3rd Street
Little Rock, Arkansas 72201
Tel.:    (501) 228-7600
Fax:    (501) 228-0415
james@duncanfirm.com

and

HOBEN LAW
Bryan D. Hoben
112 Main Street
Peekskill, New York 10566
Tel.:    (347) 855-4008
bryan@hobenlaw.com

*Counsel for Plaintiff Stephan Bognar*